IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TONY L. WEBSTER, #R71679, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 18-CV-1014-NJR |
| BALDWIN, ATKINS, JEFF DENNISON, CAMPBELL, WARDEN WALKER, and JOHN DOE, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Tony L. Webster, an inmate of the Illinois Department of Corrections ("IDOC") currently housed at Shawnee Correctional Center ("Shawnee"), filed this *pro se* action on April 25, 2018. (Doc. 1). Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 based on perceived differences in the conditions of confinement at Shawnee, compared with other medium security IDOC facilities. Plaintiff claims that these disparities violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment, amount to cruel and unusual punishment in violation of the Eighth Amendment, and constitute retaliation in violation of the First Amendment.

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim

upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

**THE COMPLAINT**

According to the Complaint, on November 1, 2011, IDOC's former director, Salvador Godinez, entered into a consent decree "that disband[ed] the old level system in place and designated the Shawnee C.C. as a medium security facility." (Doc. 1, p. 5).[1] Plaintiff claims that inmates at Shawnee are subjected harsher conditions of confinement and have fewer privileges than inmates at other medium security IDOC facilities (apparently in violation of the consent decree). *Id*. According to the Complaint, unlike inmates at other medium security institutions, inmates at Shawnee: (1) do not have access to an electronic filing program (instead pleadings must be mailed to the courts); (2) receive an insufficient amount of yard time; (3) are subject to unsanitary food service conditions; (4) live in poorly maintained cells that have peeling paint, broken windows, poor ventilation, are over-heated, and lack hot water; (5) are not given room keys; (6) are forced to sleep on unsanitary mattresses; (7) are denied an adequate grievance system; (8) are denied adequate access to ice; and (9) are subjected to arbitrary commissary limitations. (Doc. 1, pp. 5-6).

With little or no elaboration, Plaintiff claims that the alleged disparities violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment, amount to cruel and unusual punishment in violation of the Eighth Amendment, and constitute retaliation in violation of the First Amendment.

---

[1] Plaintiff identifies the Consent Decree as "No. 05.06.100." (Doc. 1, p. 5). Plaintiff also cites to 20 Ill. Adm. Code §§ 460, 503, and 505. *Id.* The Complaint indicates that a copy of the Consent Decree is attached to the Complaint. *Id.* Unfortunately, however, a copy is not attached. Instead, an exhibit attached to the Complaint references *Moorehead v. McGinnis*, Case No. 86-cv-2020 (C.D. Ill. 1991). *Moorehead* appears to have been a prisoner civil rights action directed against Michael P. Lane, an IDOC official, and Jane Huch, the former warden of Dwight Correctional Center (an IDOC facility that was closed in 2013). It further appears that, on May 1, 1991, the parties in that action entered into a consent decree, which was adopted by the court. This Court was unable to locate a publicly available copy of the consent decree issued in that action.

**DESIGNATION OF COUNTS**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit. Any claims not addressed in this Order should be considered dismissed without prejudice from this action.

**Count 1:** Fourteenth Amendment equal protection claim against Defendants relative to the conditions of confinement at Shawnee, as compared to other medium security IDOC facilities.

**Count 2:** Fourteenth Amendment due process claim against Defendants relative to the conditions at Shawnee, as compared to other medium security IDOC facilities.

**Count 3:** Eighth Amendment claim against Defendants for subjecting Plaintiff to conditions of confinement constituting cruel and unusual punishment.

**Count 4:** First Amendment retaliation claim against Defendants relative to the conditions of confinement at Shawnee, as compared to other medium security IDOC facilities.
.

**MERITS REVIEW UNDER § 1915(A)**[2]

**Count 1**

Plaintiff alleges that Defendants violated his rights to equal protection because he is housed at a medium security prison and is "treated more harshly th[a]n the other medium classified prisoners in the IDOC." (Doc. 1, p. 6).

A "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated

---

[2] Plaintiff's due process and equal protection claims are virtually identical to claims raised in a civil rights action filed by Walter Jefferson, an inmate incarcerated at Lawrence Correctional Center (also a medium security IDOC facility). *See Jefferson v. Hodge*, Case No. 13-cv-0106-GPM. Plaintiff Jefferson's due process and equal protection claims were dismissed with prejudice at screening. *Id.* Docs. 9, 15. The undersigned judge agrees with the court's reasoning in dismissing Plaintiff Jefferson's claims and adopts it here.

against him.'" *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

Plaintiff seems to believe that, because Shawnee is classified as a medium security facility, its policies concerning prison amenities should exactly mirror other medium security facilities. His logic is simply incorrect. "Inmates cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988). Accordingly, there is no guarantee that Plaintiff will receive the exact same privileges as an inmate at any other state facility, regardless of what "level" that institution has been classified. Furthermore, Plaintiff never alleges that any Defendant singled him or his fellow Shawnee inmates out for the purpose of imposing more harsh conditions. A prison does not cross the line to an equal protection violation merely by having different rules than its counterpart institutions.

Additionally, "prisoners possess neither liberty nor property [interests] in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison). Regardless of any disparity in confinement

conditions between prisons, Plaintiff does not have any constitutional right to select the institution where he will serve his sentence.

To summarize, Plaintiff has failed to state an equal protection claim upon which relief may be granted, and thus, this claim shall be dismissed with prejudice.

**Count 2**

Plaintiff alleges that because the conditions of confinement at Shawnee are not identical to the conditions at other medium security IDOC prisons, and because he has not done anything to warrant punishment in the form of more strident conditions of confinement and he has not had any sort of hearing, he has been denied due process, as guaranteed under the Fourteenth Amendment.

In *Sandin v. Conner*, 515 U.S. 472, 485 (1995), the Supreme Court explained that the Due Process Clause historically encompassed the notion that the State could not physically punish someone except in accordance with due process of law. *Id.* (quoting *Ingram v. Wright*, 430 U.S. 651, 674 (1977)). However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Sandin*, 515 U.S. at 485 (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977), quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). Consequently,

> [t]he due process clause requires hearings when a prisoner loses more liberty than what was taken away by the conviction and original sentence. That's why the right comparison is between the ordinary conditions of a high-security prison in the state, and the conditions under which a prisoner is actually held.

*Marion v. Radtke*, 641 F.3d 874, 876 (7th Cir. 2011) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 (7th Cir. 2005)).

Plaintiff's claim is premised upon a comparison of medium security facilities, not one of the state's maximum security facilities. "The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Thus, Count 2, Plaintiff's due process claim, shall be dismissed with prejudice for failure to state a claim upon which relief can be granted.

**Count 3**

The Eighth Amendment safeguards prisoners against cruel and unusual punishment. Eighth Amendment protection extends to conditions that pose a substantial risk of serious harm to an inmate's health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). To establish an Eighth Amendment violation based on unconstitutional conditions of confinement, a plaintiff must satisfy an objective requirement (*i.e.*, that he suffered a sufficiently serious deprivation) and a subjective requirement (*i.e.*, that the defendant acted with deliberate indifference to his conditions of confinement). *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008); *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

The Complaint describes conditions that may satisfy the objective component of this claim.[3] But Plaintiff has failed to include allegations suggesting Defendants exhibited deliberate indifference to the conditions of his confinement. Accordingly, the subjective requirement is not met. Here, none of the Defendants are referenced in the body of the Complaint. Merely invoking the name of a potential defendant in the caption of a complaint is not sufficient to state a claim

---

[3] Not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation and physical safety. *Rhodes,* 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Furthermore, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter,* 501 U.S. 294, 304 (1991).

against that individual under Section 1983. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Liability hinges on personal responsibility for the deprivation of a constitutional right. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). The doctrine of *respondeat superior* is not applicable to Section 1983 actions. *Id*. Therefore, Plaintiff cannot state a claim against any defendant simply because he or she supervised individuals who allegedly violated Plaintiff's constitutional rights. Instead, Plaintiff must set forth allegations which suggest that each defendant was "personally responsible for the deprivation of a constitutional right." *Id*. Plaintiff has not done so.

Plaintiff also does not allege that he was personally subjected to any of the conditions he describes. Instead, he generally describes allegedly unconstitutional conditions at Shawnee. Plaintiff cannot maintain a civil rights action based on general assertions of unlawful treatment. *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (plaintiff lacks standing in Section 1983 action where he alleges that inmates generally are treated in contravention to the constitution, but not that plaintiff himself was treated in violation of the constitution).

For these reasons, Count 3 shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.

**Count 4**

Plaintiff claims that the alleged discrepancies between Shawnee and other medium security facilities somehow amount to retaliation, in violation of his First Amendment rights. But Plaintiff fails to identify the protected conduct in which he engaged and for which Defendants allegedly retaliated against him. This is insufficient. In the prison context, an inmate alleging retaliation must identify the reasons for the retaliation, as well as the "act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s).

*Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). In other words, the "bare minimum" required to state a retaliation claim are the facts that would apprise the defendant of what the plaintiff did to provoke the alleged retaliation and how each defendant responded. *Higgs*, 286 F.3d at 439. The Complaint falls short of satisfying this standard. Additionally, as with Count 3, Plaintiff has failed to associate this claim with any particular defendant. Accordingly, Count 4 shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.

### PENDING MOTIONS

Plaintiff has filed a letter with the Court (Doc. 4) asking that his case be "listed" with *Harris v. Baldwin*, Case No. 18-cv-711-MJR (opened on March 29, 2018), and that the Court consider "making this a class action case." In light of this order dismissing Plaintiff's Complaint for failure to state a claim upon which relief can be granted, Plaintiff's requests are **DENIED as moot**.[4]

Plaintiff also has filed a Motion for Recruitment of Counsel (Doc. 3), which shall be denied at this time. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013). When a litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*,

---

[4] Plaintiff is advised that the Federal Rules of Civil Procedure permit class actions to be maintained only if the class representative "will fairly and adequately protect the interests of the class," FED. R. CIV. P. 23(a)(4), and "[e]very court that has considered the issue has held that a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action." *Lee v. Gardinez*, No. 11–cv–570–GPM, 2012 WL 143612, at *1 n.1 (S.D.Ill., Jan. 18, 2012) (quoting *Craig v. Cohn*, 80 F.Supp.2d 944, 946 (N.D.Ind.2000) (internal citations and quotation marks omitted)).

503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question ... is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

As to the first question, Plaintiff did not provide any information. Thus, the Court cannot determine if he has made a reasonable effort to obtain counsel on his own. As to the second question, Plaintiff indicates that he has some high school education and states he will have difficulty representing himself because he is incarcerated. Despite these issues, the Complaint suggests that Plaintiff has an ability to construct coherent sentences and organize his claims into a cohesive pleading. At this juncture, the Court is merely concerned with whether this action can get out of the gate, so to speak. All that is required is for Plaintiff to associate specific claims with specific defendants and/or to provide additional information (if there is any) regarding how Plaintiff's rights were personally violated. No legal training or expert knowledge is required to do this. Therefore, the recruitment of counsel is not warranted at this time, and the motion is **DENIED**. The Court will remain open to the appointment of counsel in the future.

### Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1** and **2** are **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that **COUNTS 3** and **4** are **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted.

With respect to **COUNTS 3** and **4** only, Plaintiff is **GRANTED** leave to file a "First Amended Complaint" on or before **June 18, 2018**. Should Plaintiff fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. APP. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamming*a, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g) because he has yet to state a claim upon which relief may be granted.

Should Plaintiff decide to file a First Amended Complaint, it is strongly recommended that he use the forms designed for use in this District for such actions. He should label the form, "First Amended Complaint," and he should use the case number for this action (*i.e*. 18-cv-1014-NJR).

To enable Plaintiff to comply with this Order, the Clerk of Court is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. The First Amended Complaint is subject to review pursuant to

28 U.S.C. § 1915(e)(2).

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 24, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**