# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TONY L. WEBSTER, #R71679, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | Case No. 18-CV-1014-NJR |
| BALDWIN, ATKINS, JEFF DENNISON, CAMPBELL, WARDEN WALKER, MAJOR GRISSOM, and MAJOR HILLE, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Tony L. Webster, an inmate of the Illinois Department of Corrections ("IDOC") currently housed at Shawnee Correctional Center ("Shawnee"), filed this *pro se* action pursuant to 42 U.S.C. § 1983. Plaintiff's original Complaint (Doc. 1) did not survive preliminary review, and his Amended Complaint (Doc. 8) is now before the Court for screening pursuant to 28 U.S.C. § 1915A.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

## BACKGROUND

Plaintiff's original Complaint brought claims based on perceived differences in the conditions of confinement at Shawnee, compared with other medium security IDOC facilities. Plaintiff claimed that the alleged disparities violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment, amount to cruel and unusual punishment in violation of the Eighth Amendment, and constitute retaliation in violation of the First Amendment.

Based on the allegations in the original Complaint, the Court divided Plaintiff's claims into the following counts:

> **Count 1:** Fourteenth Amendment equal protection claim against Defendants relative to the conditions of confinement at Shawnee, as compared to other medium security IDOC facilities.
>
> **Count 2:** Fourteenth Amendment due process claim against Defendants relative to the conditions at Shawnee, as compared to other medium security IDOC facilities.
>
> **Count 3:** Eighth Amendment claim against Defendants for subjecting Plaintiff to conditions of confinement constituting cruel and unusual punishment.
>
> **Count 4:** First Amendment retaliation claim against Defendants relative to the conditions of confinement at Shawnee, as compared to other medium security IDOC facilities.

.
(Doc. 7, p. 3). Counts 1 and 2 were dismissed with prejudice. (Doc. 7, pp. 3-6). However, Counts 3 and 4 were dismissed without prejudice and with leave to amend. (Doc. 7, pp. 6-8).

## THE AMENDED COMPLAINT

The Amended Complaint can be divided into four sets of claims: (1) Eighth Amendment claims pertaining to Shawnee's food service; (2) Eighth Amendment claims pertaining to the conditions in Plaintiff's cell; (3) First Amendment claims pertaining to Shawnee's alleged "universal punishment" policy; and (4) Fourteenth Amendment claims pertaining to the alleged

"universal punishment" policy. The relevant allegations are summarized below.

**Unsanitary Food Service Conditions**

Plaintiff worked in Shawnee's cafeteria in 2017 and 2018. (Doc. 8, p. 5). During that time, he observed and experienced the following conditions: (1) a dirty kitchen; (2) lack of hot water to clean food service areas and pots and pans; (3) food contaminated with bleach; (4) food that tastes like soap; (5) food left sitting on trays for hours, without steam tables or heaters; (6) food served in the same carts used to carry out trash (without sanitizing the carts); and (7) food served by workers with long facial hair who are not wearing beard nets. *Id.* Plaintiff claims that, after eating in Shawnee's cafeteria, he has experienced stomach cramps, diarrhea, violent vomiting, burning in his throat, fever, and body aches. *Id.* Plaintiff says he complained about these conditions, in person or in writing, to Major Grissom, Major Hille, Warden Dennison, Warden Campbell, and Warden Walker. *Id.* He also claims that he spoke to Assistant Director Atkins in the fall of 2017 when he was visiting Shawnee, and that he submitted grievances to Director Baldwin. *Id.* According to Plaintiff, Defendants have ignored his complaints and have not taken any action to remedy the allegedly unconstitutional conditions.

**Cell Conditions**

Plaintiff is housed in Unit Two, where bed bugs and scabies are prevalent. (Doc. 8, p. 6). Plaintiff has been bitten by bed bugs on numerous occasions and has developed skin rashes from contact with an unsanitary mattress. *Id.* According to Plaintiff, his mattress is damaged (torn open with the bedding cover removed) and soiled with feces, urine, and sweat. *Id.* Plaintiff does not have access to cleaning materials to clean the soiled mattress. *Id.* Although windows are supposed to be closed in the winter, the windows in Plaintiff's housing unit are broken and cannot be closed. *Id.* Plaintiff also claims that the ventilation system is filthy, making it difficult

for him to sleep and breath at night. *Id.* He also notes that the paint is peeling in his cell, and as a result, he constantly finds paint chips in his food, hair, clothing, and bedding. *Id.* Plaintiff suggests that Warden Dennison is responsible for these conditions because "he holds the mittimus papers to incarcerate [Plaintiff]" and because he is the Chief Administrative Officer at Shawnee. *Id.* He also claims that he is "subjected to these conditions because the Wardens and Majors run Shawnee C.C. as a punishment prison to deter the numerous prisoner litigators [Plaintiff] is housed with." *Id.*

**Universal Punishment - Retaliation**

Plaintiff alleges that Wardens Campbell, Dennison, and Walker, as well as Majors Grissom and Hille, have implemented a "universal punishment" policy. (Doc. 8, pp. 6-7). According to Plaintiff, pursuant to the policy, when a single prisoner submits a grievance, his entire wing or housing unit is punished. *Id.* More specifically, under the policy, the staff member named in the grievance reads the grievance out loud to the complaining inmate's wing or housing unit, and the inmates are told they will all be punished because of the complaining inmate's grievance.

Plaintiff claims that, because of this policy, a staff member told the inmates in Plaintiff's wing that they were all being punished because of "the grievance written by [Plaintiff]." (Doc. 8, p. 7). Plaintiff claims this was done to "get the other inmates to intimidate [him] into not filing the grievance, or not following through with the grievance procedure in place." *Id.* Plaintiff also alleges that he was subjected to the "universal punishment" policy when he filed this lawsuit. *Id.*

**Universal Punishment – Due Process**

Plaintiff also claims that the alleged "universal punishment" policy violates inmates' due process rights. *Id.* According to the Amended Complaint, "[w]hen a prisoner acts out, does not

for him to sleep and breath at night. *Id.* He also notes that the paint is peeling in his cell, and as a result, he constantly finds paint chips in his food, hair, clothing, and bedding. *Id.* Plaintiff suggests that Warden Dennison is responsible for these conditions because "he holds the mittimus papers to incarcerate [Plaintiff]" and because he is the Chief Administrative Officer at Shawnee. *Id.* He also claims that he is "subjected to these conditions because the Wardens and Majors run Shawnee C.C. as a punishment prison to deter the numerous prisoner litigators [Plaintiff] is housed with." *Id.*

**Universal Punishment - Retaliation**

Plaintiff alleges that Wardens Campbell, Dennison, and Walker, as well as Majors Grissom and Hille, have implemented a "universal punishment" policy. (Doc. 8, pp. 6-7). According to Plaintiff, pursuant to the policy, when a single prisoner submits a grievance, his entire wing or housing unit is punished. *Id.* More specifically, under the policy, the staff member named in the grievance reads the grievance out loud to the complaining inmate's wing or housing unit, and the inmates are told they will all be punished because of the complaining inmate's grievance.

Plaintiff claims that, because of this policy, a staff member told the inmates in Plaintiff's wing that they were all being punished because of "the grievance written by [Plaintiff]." (Doc. 8, p. 7). Plaintiff claims this was done to "get the other inmates to intimidate [him] into not filing the grievance, or not following through with the grievance procedure in place." *Id.* Plaintiff also alleges that he was subjected to the "universal punishment" policy when he filed this lawsuit. *Id.*

**Universal Punishment – Due Process**

Plaintiff also claims that the alleged "universal punishment" policy violates inmates' due process rights. *Id.* According to the Amended Complaint, "[w]hen a prisoner acts out, does not

lock up on time, files a grievance, or violates a rule the wing officer assigned to that unit is allowed to stay in the control booth and impose punishment upon every prisoner for the acts of one prisoner." *Id.* Plaintiff claims this is a due process violation because a prisoner cannot be subjected to punishment without receiving the due process protections outlined in *Wolff v. McDonnel,* 94 S. Ct. 2963 (1974). *Id.* Plaintiff alleges that, pursuant to the alleged policy, his yard, gym, and dayroom privileges have periodically been restricted. *Id.*

### DESIGNATION OF COUNTS

Based on the allegations of the original Complaint, the Court designated four counts in this action. Counts 1 and 2 were dismissed with prejudice, and Counts 3 and 4 were dismissed without prejudice. Based on the allegations of the Amended Complaint, the Court will modify Counts 3 and 4 to reflect Plaintiff's amended allegations. The Court also will include two additional counts, as designated below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit. Any claims not addressed in this Order should be considered dismissed without prejudice from this action.[1]

> **Count 3:** Eighth Amendment claim against Defendants for subjecting Plaintiff to unsanitary cafeteria conditions.
>
> **Count 4:** Eighth Amendment claim against Defendants for subjecting Plaintiff to unconstitutional conditions of confinement, including an unsanitary and bug infested mattress, cold cell temperatures during the winder due to broken windows, poor ventilation, and inadequate cleaning supplies.
>
> **Count 5:** First Amendment claim against Dennison, Campbell, Walker, Grissom, and Hille for maintaining a policy, custom, or practice allowing prison officials to retaliate against Plaintiff for filing grievances and lawsuits.

---

[1] This includes but is not limited to Plaintiff's allegations pertaining to not receiving "dietary whites," only receiving "two pairs of State blues," and lacking sufficient funds to wash his clothing. (Doc. 8, p. 5).

**Count 6:** Fourteenth Amendment claim against Dennison, Campbell, Walker, Grissom, and Hille for maintaining a policy, custom, or practice allowing prison officials to revoke privileges without due process.

## MERITS REVIEW UNDER SECTION 1915(A)

**Count 3**

Prison officials must provide prisoners with a healthy, livable environment, including nutritionally adequate food that is served under conditions that to do not present an immediate danger to the well-being of inmates who consume it. *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). *See also Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (Prison conditions that deprive inmates of basic human needs—food, medical care, sanitation, or physical safety—may violate the Eighth Amendment). Plaintiff describes several unsanitary conditions with respect to food preparation and service at Shawnee. He also claims that, because of these allegedly unsanitary conditions, he has experienced vomiting, diarrhea, fever, cramping, body aches, and burning in his throat. Thus, Plaintiff has sufficiently alleged that the food at Shawnee is unsanitary and presents a danger to his well-being. He also alleges that Defendants were aware of these conditions, but failed to take action to remedy them. This is sufficient, at screening, to allow Count 1 to proceed as to Baldwin, Atkins, Dennison, Campbell, Walker, Grissom, and Hille.

**Count 4**

The conditions described by Plaintiff (e.g., pest infestations in Plaintiff's cell, an unsanitary mattress, lack of cleaning supplies, cold cell temperatures, and poor ventilation) are objectively serious enough to implicate the Eighth Amendment. *See* e.g., *Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016) (insect infestation along with lack of cleaning supplies and broken window in cell); *Budd v. Motley*, 711 F.3d 840, 842-43 (7th Cir. 2013) (considering

combined effect of conditions); *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) (prolonged pest infestation); *Dixon v. Godinez*, 114 F.3d 640, 642-44 (7th Cir. 1997) (cold cell temperatures). Nevertheless, Count 4 is subject to dismissal; unless a defendant was put on notice of a risk, he or she cannot be found to be deliberately indifferent to any threat Plaintiff faced. *See* e.g., *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (relevant inquiry is whether Defendants actually knew about the complained of conditions). *See also Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation."). Plaintiff does not allege that he made any defendant aware of these conditions. In fact, he describes no contact with any defendant. He merely suggests that Warden Dennison is subject to liability because he maintains a supervisory position.[2] But, the doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See,* e.g., *Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). Accordingly, Count 4 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Count 5**

Prison officials may not retaliate against inmates for filing grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). To state a claim for retaliation, "a plaintiff must allege only enough to put the defendants on notice and enable them to respond." *McElroy v. Lopac,* 403 F.3d 855, 858 (7th Cir. 2005). In this regard, allegations describing a defendant's retaliatory conduct and the constitutionally protected activity that motivated the retaliatory

---

[2] He also claims that he is being subjected to these conditions because the wardens and majors at Shawnee are running a "punishment prison." This vague allegation does not support a deliberate indifference claim as to any defendant.

conduct are sufficient. *Id.*

Plaintiff claims that Dennison, Campbell, Walker, Grissom, and Hille implemented and/or maintained a "universal punishment" policy allowing prison officials to retaliate against inmates for filing grievances. According to Plaintiff, pursuant to the alleged policy, when an inmate files a grievance, his entire wing or unit is punished, thereby deterring First Amendment activity in the future. Plaintiff alleges he was subjected to this retaliatory policy for filing a grievance and for filing this case. These allegations are sufficient to allow Count 5 to proceed against Dennison, Campbell, Walker, Grissom, and Hille.

**Count 6**

Plaintiff claims that, because of the alleged "universal punishment" policy, he has lost privileges without due process. But the restrictions Plaintiff describes (loss of gym, yard, and dayroom privileges) do not trigger due process concerns. *See* e.g., *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges). *See also Zinermon v. Burch,* 494 U.S. 113, 125 (1990) (To prevail on a claim of a violation of the right to due process, a prisoner must show that he or she possesses a protected liberty or property interest and has been deprived of that interest without due process). Accordingly, Count 6 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**DISPOSITION**

**IT IS HEREBY ORDERED** that **COUNTS 4** and **6** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 3** shall receive further review as to **BALDWIN, ATKINS, DENNISON, CAMPBELL, WALKER, GRISSOM,** and **HILLE.**

**IT IS FURTHER ORDERED** that **COUNT 5** shall receive further review as to **DENNISON, CAMPBELL, WALKER, GRISSOM,** and **HILLE**.

**IT IS FURTHER ORDERED** that, with respect to **COUNTS 3** and **5**, the Clerk of Court shall prepare for **BALDWIN, ATKINS, DENNISON, CAMPBELL, WALKER, GRISSOM,** and **HILLE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to each Defendant's place of employment. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the

Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** August 1, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**